UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DISTRICT

SMITHFIELD PACKAGED MEATS CORP.,

          Petitioner,           Civ. No. __4:20-mc-18__

v.

UNITED STATES OF AMERICA
DEPARTMENT OF LABOR,
OCCUPATIONAL SAFETY AND
HEALTH ADMINISTRATION,

          Respondent.

## MOTION TO QUASH OR FOR PROTECTION FROM SUBPOENA AND BRIEF IN SUPPORT

Smithfield Packaged Meats Corp. ("Smithfield" or the "Company") respectfully moves this Court for an Order quashing, or otherwise protecting Smithfield from, the Occupational Safety and Health Administration's ("OSHA") Subpoena *duces tecum* served on the South Dakota Department of Health ("DOH") on June 23, 2020 (the "Subpoena"), as set forth more specifically below. *See* Exhibit 1, Subpoena to DOH. This Subpoena arises in the context of OSHA's ongoing investigation of Smithfield's Sioux Falls, South Dakota meat processing plant.

The Subpoena raises significant public policy implications relevant to the nation's ongoing response to the novel COVID-19 virus and, if enforced without limitation or procedural safeguards, will undoubtedly chill critical collaborations between essential employers and public health agencies going forward. Specifically, the Subpoena seeks information and documents that were provided by Smithfield to DOH in the context of advancing public health and the health of its employees, and subject to an agreement that the information would be adequately protected. Smithfield's employees have legitimate privacy interests in this information, and Smithfield and

1

DOH are legally obligated to protect it. Further, the Subpoena violates Smithfield's due process rights. OSHA is using the Subpoena, and the Court's process, to bypass OSHA's own procedural safeguards for employers and improperly obtain documents and information that it would not be entitled to obtain from Smithfield through its standard investigative framework. Finally, the Subpoena seeks information that is not relevant or proportionate to OSHA's ongoing investigation of Smithfield.

For these reasons, the Court has sufficient basis to quash the Subpoena in its entirety. However, at this time, Smithfield seeks a more limited remedy. Specifically, Smithfield requests that the Court allow the Company to conduct a pre-production review of DOH's response to the Subpoena to identify any documents or information (1) that may require redaction of confidential employee information; (2) that should be designated confidential business information of Smithfield; or (3) to which Smithfield may have a legal objection to production that requires a court determination. DOH has agreed that Smithfield can conduct a pre-production review if OSHA consents. OSHA has not consented, which has led to this Motion. Such a review would give Smithfield the opportunity to narrow the scope of any objection it has to DOH's production and facilitate discussions between Smithfield and OSHA for resolving those objections without further involvement by the Court.

In further support of its Motion, Smithfield states as follows:

### I. BACKGROUND

**A.    OSHA's Investigation at Smithfield's Sioux Falls Plant**

OSHA is currently conducting an investigation of Smithfield's response to COVID-19 at its Sioux Falls, South Dakota plant (the "Plant"). OSHA initiated its investigation on April 20, 2020 and shortly thereafter issued a subpoena to Smithfield seeking production of 34 categories of documents. *See* Exhibit 2, First Subpoena to Smithfield. OSHA issued a second subpoena to

Smithfield on June 17, 2020 seeking 17 additional categories of documents. *See* Exhibit 3, Second Subpoena to Smithfield. Smithfield has fully cooperated with OSHA, producing thousands of pages of responsive documents, with planned production of thousands more. The Company and OSHA have been able to amicably and swiftly resolve all disputes about scope and timing of Smithfield's responses.

Additionally, OSHA has conducted extensive interviews of Smithfield's management and other employees and conducted an on-site visit and tour of the Plant. More interviews are planned. During the investigation, Smithfield has had the protection of procedural safeguards guaranteed by OSHA's standard investigative processes, including but not limited to the right of management employees to have a company attorney or other representative present at the interview, the right of non-managerial employees to have a union representative—or other representative of their choosing—present, and the contextual information that OSHA is required to disclose prior to any interviews.

Given Smithfield's high level of cooperation throughout the investigation and fulsome responses to requests for information, Smithfield was very surprised to learn of the June 23, 2020 Subpoena that OSHA issued to DOH seeking Smithfield documents and information in DOH's possession. *See* Exhibit 1. Smithfield was hopeful that once it raised its objections to the Subpoena, OSHA would work with the Company to resolve Smithfield's concerns as it has throughout this investigation. That was not the case.

The Subpoena is troubling for numerous reasons, but its public policy implications raise particular concern given the circumstances that led DOH to be in possession of Smithfield's documents and information at all, as set forth in the following Section, and the understanding and agreement that DOH and Smithfield had to protect such information.

### B.     Smithfield's Partnership with DOH

Smithfield is deeply committed to the safety and well-being of its workers and the Sioux Falls community at large. The Plant at issue is a meat processing facility, which is an essential business that is vital to the nation's food supply. It employs thousands of workers, providing them with generous compensation and benefits.

One of the Plant's employees was diagnosed with COVID-19 while on vacation in late March. Smithfield immediately partnered with DOH and a team from the Centers for Disease Control and Prevention ("CDC") to identify measures to mitigate risk associated with the novel virus among the Plant's employee population. The Company shut down the Plant on April 11 and, before reopening, opened its doors to DOH and CDC during a two-day site visit conducted over April 16 and 17, 2020, shared information, and made managers and hourly workers available to DOH/CDC scientists. CDC issued an extensive report on April 22, 2020 documenting its observations at the Plant and providing recommendations for reducing possible spread of the virus among employees. *See* Exhibit 4, CDC Memorandum. Smithfield began reopening the Plant on May 11, 2020, only after receiving approval from DOH, CDC, and the Department of Agriculture.

Smithfield continues to partner with DOH and CDC in further study of its employees and the Plant to be used for the advancement of scientific knowledge of the novel COVID-19 virus. DOH has obligations to protect the confidential health and identifying information of South Dakota residents, and Smithfield's cooperation has been subject to an agreement and understanding that it will protect the same information as it relates to Smithfield's employees.

The cooperative partnership between Smithfield and DOH is fundamentally different than the relationship between Smithfield and OSHA. OSHA's current investigation of Smithfield is

4

adversarial, and based on its findings, the agency has the power to issue citations and impose substantial penalties. As such, regulatory safeguards exist in this context to protect Smithfield's rights to due process of law, to protect trade secrets and proprietary business information, and to protect the privacy of Smithfield's employees.

### C.    OSHA's Subpoena to DOH

The DOH Subpoena was issued on June 23 and provided only three days for DOH's response (until June 26, 2020 at 1:00 p.m.). The Subpoena broadly seeks production of information that Smithfield provided to DOH in the interest of public health as well as DOH's own records and analysis. OSHA claims to Smithfield that it is only seeking Smithfield's own information, but as drafted, the Subpoena contains no such limitation. Further, if OSHA really seeks only documents that it could obtain directly from Smithfield, as it claims, it does not need to subpoena DOH at all. These facts support Smithfield's legitimate concern that OSHA issued the Subpoena to obtain information it could not legally obtain directly from Smithfield, and provided a short timeline for DOH's response to preclude Smithfield from having an opportunity to assert its objections and take measures to protect its legitimate interests.

After learning of the Subpoena, Smithfield promptly contacted OSHA to raise its objections and attempt to open a dialogue to negotiate their resolution. *See* Exhibit 5, Smithfield's Objection Letter. Although OSHA agreed to extend the deadline for DOH's response to Wednesday, July 1, OSHA was otherwise unwilling to negotiate the scope of DOH's response or meaningfully discuss any alternative approach that accounted for Smithfield's objections. This included a flat refusal of Smithfield's request to conduct a pre-production review of DOH's response to the Subpoena to determine whether any documents or information to be produced required further protection or objection. Smithfield's counsel emphasized that

5

this review could potentially allow Smithfield to withdraw all objections to the Subpoena and could thereby avoid Court involvement. Nevertheless, OSHA refused to grant Smithfield's request. *See* Exhibit 6, OSHA's June 30, 2020 Response to Smithfield's Objection Letter and Smithfield's July 1, 2020 Reply to OSHA's Response to Smithfield's Objection Letter.

It is against this backdrop that Smithfield now moves this Court for an Order requiring that Smithfield be given an opportunity to review DOH's production before it is provided to OSHA so that it can narrow the scope of its objections, if any, for resolution with OSHA and/or through this Motion and otherwise identify any necessary protective steps that must be taken to preserve its due process rights or the privacy interests of its employees.

## II.   **LEGAL STANDARD**

An administrative subpoena is properly enforced only if the agency shows that the subpoena is "(1) issued pursuant to lawful authority, (2) for a lawful purpose, (3) requesting information relevant to the lawful purpose, and (4) the information sought is not unreasonable." *Fresenius Med. Care v. United States*, 526 F.3d 372, 375 (8th Cir. 2008); *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S. Ct. 357, 369, 94 L. Ed. 401 (1950) ("But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant."). "If an agency has satisfied these requirements …, the burden shifts to the respondent to show that judicial enforcement 'would amount to an abuse of the court's process.'" *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012) (quoting *EEOC v. Peat, Marwick, Mitchell & Co.*, 775 F.2d 928, 931 (8th Cir.1985)). For the reasons set forth below, OSHA cannot show that the information requested in the Subpoena is not unreasonable.

Further, although OSHA issued the Subpoena to DOH—not Smithfield—Smithfield undoubtedly has standing to challenge the Subpoena. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (identifying the three elements to Article III standing as (1) injury in fact, (2) causation, and (3) redressability); *see also Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012). Because, as set forth below, OSHA seeks to obtain Smithfield's documents and information from DOH, Smithfield will suffer a concrete and particularized injury if DOH responds to the Subpoena and provides OSHA with Smithfield documents and information to which OSHA is not entitled. *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (an "injury in fact" is one that is "concrete, particularized, and either actual or imminent"); *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012) (the causation requirement is satisfied if the injury is "fairly traceable" to the "the complained-of conduct"). Finally, this Court can redress that injury by quashing, or otherwise protecting Smithfield from, the Subpoena. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012) (defining redressability as "a likelihood that the requested relief will redress the alleged injury"). *Id.*

### III.  ARGUMENT

**A.  The Subpoena raises significant negative public policy implications.**

As a threshold matter, enforcement of the Subpoena will inevitably chill ongoing cooperation between employers and public health agencies during COVID-19—cooperation that is critical given how much remains unknown about the novel virus and the fact that essential employers are currently uniquely situated for scientific study.

Prior to OSHA's involvement at the Plant, Smithfield voluntarily disclosed documents and information to DOH for numerous public health purposes, including epidemiological study of the Plant's employee population. OSHA now seeks to collect those documents and

information so that it can use them against Smithfield in an adversarial proceeding. In other words, OSHA seeks to weaponize Smithfield's voluntary cooperation with a public health agency for the purpose of public health investigation and epidemiological study. If allowed, OSHA's conduct will create entirely backwards incentives during the current pandemic. No reasonable employer will voluntarily cooperate with public health officials for the greater good if the outcome of that cooperation is an enforcement action by another government agency.

Moreover, beyond simply frustrating the current Smithfield-DOH partnership, the Subpoena has the potential to turn Smithfield and DOH into adversaries. For example, Category 5 seeks "[s]tatistical data reflecting any potential clusters of COVID-19 within the plant, including production lines, work stations, or common areas." To the extent OSHA seeks to use DOH-collected, compiled, and analyzed data in an effort to prove hazardous conditions at the Plant, OSHA is essentially converting DOH into an expert witness. Further, to the extent OSHA issues citations to Smithfield based on DOH's statistical analyses, the Company will likely find itself in the position where it must depose DOH in order to defend its interests against OSHA. To bring DOH into OSHA's investigation in this way will inevitably hinder ongoing scientific progress. If OSHA seeks to make a case based upon statistical data, it needs to conduct its own analysis using its own resources or publicly available information.

Enforcement of the Subpoena will have far-reaching and damaging consequences for public health during the current pandemic. For these reasons, the Subpoena seeks information that is unreasonable under *Morton Salt* and its progeny. The Court should provide Smithfield with the pre-production opportunity to review DOH's response to the Subpoena, narrowly tailor its objections (if any), seek appropriate protections if necessary, and attempt to resolve any outstanding issues directly with OSHA, without further Court involvement.

**B.     The Subpoena seeks information that, if provided to OSHA, has the potential to violate Smithfield's due process rights and the privacy interests of its employees.**

It is undisputed that OSHA initiated its investigation at the Plant well after DOH initiated its investigation. Specifically, OSHA's investigation began on April 20, 2020—after the Plant had temporarily closed—while DOH's investigation began in late-March 2020—after COVID-19 had been detected in the employee population but the Plant was still in operation. As a result, certain Smithfield documents and information in DOH's possession cover a much earlier timeframe than those that OSHA has been able to collect. OSHA now seeks to use a backdoor channel (DOH) to obtain information it has not been able to obtain directly from Smithfield—that is, documents and information that pre-date its investigation. To the extent DOH's response to the Subpoena includes such information, Smithfield should be given an opportunity to identify its objections and/or take measures to protect its documents and information from disclosure as appropriate. OSHA's subversion of its standard investigative processes deprives Smithfield of this opportunity, and as such, is unreasonable, patently unfair, and raises significant due process and privacy concerns.

For example, Category 4 seeks from DOH "[i]nterviews conducted with employees or management officials related to the outbreak of COVID-19." In the context of OSHA's investigation of the Plant, the agency has already taken numerous Smithfield employee interviews. Those interviews have been conducted pursuant to well-established and strict procedural safeguards. Management employees have had company attorneys present for their interviews. Non-management employees have had the right to union representation if they elected. OSHA informed all management employees, and presumably all hourly employees, about the purpose of its investigation and the scope of its inquiry prior to conducting the

interviews. *See* OSHA 2020 Field Operations Manual ("FOM"), Ch. 3 [Inspection Procedures], § (II); Ch. 5, §VII.

By contrast, in the context of Smithfield's cooperation with DOH, Smithfield did not insist on any of these procedural protections for interviews conducted by DOH investigators. The Company simply made its employees available to DOH in the interest of public health. Thus, Smithfield will be extremely prejudiced in OSHA's investigation, and any future enforcement action, if OSHA is permitted to obtain information collected during DOH interviews, conducted outside of OSHA's standard procedural framework.

As another example, Category 6 seeks from DOH "[p]hotographs and/or video taken of the plant, including workstations, processes or equipment." This request seeks Smithfield's trade secrets and its confidential and proprietary information, which Smithfield shields from public disclosure. *See* FOM Ch. 5-12(C). Specifically, photographs and videos will show the equipment and processes that Smithfield uses on its production lines, which have value to Smithfield's competitors. Under OSHA's standard procedural framework, Smithfield would not have disclosed this information to OSHA directly without appropriate confidential classification establishing that it would not be subject to FOIA disclosures or used for any purpose outside OSHA's investigation. However, because OSHA is acting outside of its procedural framework in attempting to obtain the photographs and videos from DOH instead of Smithfield, Smithfield will not be entitled to those safeguards.

Finally, Categories 1 and 2 of the Subpoena seek Smithfield employee health information. As such, it is possible that DOH's response to these categories will implicate the privacy interests of Smithfield's employees, which Smithfield has a duty to safeguard and which Smithfield understood DOH would take strict measures to protect as required by law. Smithfield

10

should be given the opportunity to ensure that sufficient measures are taken. In fact, OSHA's standard investigative procedures—had the agency followed them here—provide a process by which Smithfield legally may share information in its possession regarding employee personally identifiable health information. Specifically, to obtain this protected information, OSHA's operations manual prescribes the collection of information through subpoenas, which must be narrowly tailored to achieve the agency's purpose. Moreover, OSHA has in place regulations designed to limit third party access to its <u>own</u> records. OSHA's request that DOH turn over information in a manner that subverts this process contradicts the very principles under which OSHA itself operates. Smithfield should be given the opportunity to review DOH's production in advance of submission to OSHA so that it can take any necessary steps to protect its employees' information and privacy rights.

To allow OSHA to obtain the requested information from DOH will allow OSHA to bypass critical procedural safeguards to which Smithfield and its employees are entitled. This is unreasonable under *Morton Salt* and its progeny and has the potential to violate Smithfield's due process rights and the privacy interests of its employees. The Court should grant Smithfield the pre-production review it requests so that measures can be taken to protect these legally recognized interests.

C.  **The Subpoena seeks information that is not relevant or proportionate to OSHA's investigation of Smithfield's Sioux Falls plant.**

Smithfield should be granted an opportunity for pre-production review of DOH's Subpoena response for the additional reason that the Subpoena is "too indefinite" under *Morton Salt*, is overly broad, and seeks information that is not relevant or proportionate to OSHA's investigation of the Plant. *See Morton Salt Co.*, 338 U.S. 632, 652 (1950). Under OSHA's

standard investigative procedures, Smithfield would be entitled to the opportunity to object to such requests and should be given such an opportunity under the current circumstances as well.

For example, Category 3 seeks "[c]orrespondence between the South Dakota Department of Health and Smithfield representatives," and Category 7 seeks "[a]ny recommendations issued to Smithfield by the State of South Dakota, Department of Health, to combat the spread of the virus." As a preliminary matter, these requests are overly broad because OSHA already has access to the publicly-available report that CDC issued following the DOH/CDC's site visit to the Plant. That document contains DOH's observations at the Plant and its recommendations for the Plant's re-opening. The document is comprehensive with respect to the information DOH chose to share with the public. Any further inquiry by OSHA is nothing more than a fishing expedition and should not be permitted.

Further, Category 3 is insufficiently definite under *Morton Salt* because there is no time or subject matter limitation on the requested correspondence, and as such, it seeks information neither relevant to, proportionate to, or within the scope of OSHA's current investigation of the Plant. *See* 29 U.S.C. § 657; *Morton Salt,* 338 U.S. at 652; FOM, Ch. 3; *Donovan v. Union Packing Co. of Omaha,* 714 F.2d 838, 839 (8th Cir. 1983) (Secretary has subpoena power to obtain records company required to maintain under section 657 "as well as other standard records which are necessary to compute the lost workday injury rate.").

Similarly, OSHA's request in Category 4 for information from DOH's interviews with Smithfield's employees seeks information not relevant or proportionate to its investigation. Specifically, the information Smithfield managers and hourly workers shared with DOH for public health purposes is not coextensive with the information to which OSHA has a right for law enforcement purposes. For example, DOH investigators may have asked for management's

12

opinions or beliefs about certain topics, or asked them to speculate about how alternative approaches may or may not have worked. Such questions would be inappropriate in an OSHA management interviews, and Smithfield's counsel in fact objected to such questions during management interviews. Moreover, OSHA conducted 12 of its own interviews of Smithfield management and more than 20 interviews with other employees, and has since requested four additional interviews with corporate representatives. Through these interviews, it has had, and continues to have, a fulsome opportunity to obtain any information relevant to its investigation. Requiring DOH to turn over notes from its interviews—where OSHA's procedural safeguards were not in place—is nothing more than clear and unnecessary agency over-reach. *See* FOM, Ch. 3-5 generally. Smithfield should be given the pre-production opportunity to object to such requests and seek any necessary relief from the Court.

## IV. CONCLUSION

For the reasons set forth above, Smithfield respectfully requests that the Court issue an Order that provides Smithfield the opportunity to review DOH's production in response to the Subpoena, prior to submission to OSHA, to identify any documents or information (1) that may require redaction of confidential employee information; (2) that should be designated confidential business information of Smithfield; or (3) to which Smithfield may have a legal objection to production that requires a court determination. Such an Order will allow Smithfield to narrow the scope of the objections set forth herein and attempt to resolve them without further involvement by the Court on this Motion.

## CERTIFICATE OF GOOD FAITH EFFORT TO MEET AND CONFER

Undersigned counsel hereby certifies that Smithfield has made multiple efforts to meet and confer with OSHA regarding the subject matter of this Motion, including specifically

requesting the particular relief requested in this Motion. Those efforts were not successful, thus requiring the filing of this Motion.

Dated this 1st day of July, 2020.

_____
Lisa Hansen Marso
BOYCE LAW FIRM, L.L.P.
300 South Main Avenue
P.O. Box 5015
Sioux Falls, SD 57117-5015
(605) 336-2424
lkmarso@boycelaw.com

Susan F. Wiltsie (*PRO HAC VICE* -PENDING)
HUNTON ANDREWS KURTH, L.L.P.
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 955-1500
swiltsie@huntonAK.com

Alexandra Cunningham (*PRO HAC VICE* -PENDING)
HUNTON ANDREWS KURTH, L.L.P.
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 787-8087
acunningham@huntonAK.com

Attorneys for Petitioner

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Smithfield Packaged Meats Corp.

**(b)** County of Residence of First Listed Plaintiff  Minnehaha
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
BOYCE LAW FIRM, LLP
300 South Main Avenue, P.O. Box 5015, Sioux Falls, SD 57117
(605) 336-2424

## DEFENDANTS
United States of America Department of Labor, Occupational Safety and Health Administration

County of Residence of First Listed Defendant  Minnehaha
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise |  | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee |  | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** |  | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 555 Prison Condition |  |  |  |
|  | ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 USC Section 657
Brief description of cause:
Quash Subpoena

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE: 07/01/2020
SIGNATURE OF ATTORNEY OF RECORD: *(signed) for Lisa Marso*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____