# Exhibit 5



HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

SUSAN F. WILTSIE
DIRECT DIAL: 202 • 955 • 1546
EMAIL: swiltsie@HuntonAK.com

FILE NO: 027120.0000618

June 25, 2020

**Via E-Mail**

Sheila A. Stanley
Area Director
Occupational Safety and Health Administration
4404 South Technology Drive
Sioux Falls, SD 57106

## Objections of Smithfield Packaged Meats Corp. to OSHA's Subpoena Duces Tecum to South Dakota Department of Health

Dear Sheila:

Smithfield Packaged Meats Corp. ("Smithfield" or the "Company") has received a copy of the subpoena *duces tecum* you served on the South Dakota Department of Health ("DOH"), which requires production of documents on June 26, 2020 (the "Subpoena"). I write to express Smithfield's concerns about the purpose and scope of the Subpoena, and to assert the Company's legal objections.

As you well know, since the commencement on April 20, 2020 of OSHA's investigation at the Smithfield Sioux Falls facility, OSHA has served two subpoenas on Smithfield. Smithfield has fully cooperated with OSHA, producing thousands of pages of responsive documents, with planned production of thousands more pages. The Company and OSHA have been able to amicably and swiftly resolve all disputes about scope and production timing of the Subpoena responses.

Given this high level of cooperation and fulsome response, we were alarmed to learn that OSHA is seeking information from DOH to use against the Company. Some of the requested information already has been provided by the Company to OSHA. As such, OSHA does not need to seek that information from DOH. The remainder, however, we consider an inappropriate over-reach and at odds with public policy.

As background, Smithfield has partnered with DOH since the very first reported cases of COVID-19 at its plant. It opened its doors to DOH and CDC, shared information and made managers and hourly workers available to DOH/CDC investigators. It continues to partner with DOH in an epidemiological study to be used for scientific purposes.



Sheila A. Stanley
June 25, 2020
Page 2

Smithfield strongly objects to OSHA's attempt to obtain the information that Smithfield disclosed to DOH for public health and scientific purposes. The Company views this as an attempt to end-run OSHA's standard investigative process and associated procedural safeguards, and obtain from a third party what it could not obtain through a standard investigation. Smithfield's due process rights thus are compromised by this Subpoena, which gives Smithfield standing to challenge the Subpoena in court.

The policy implications of this Subpoena are troubling, as well. In effect, the Subpoena takes advantage of Smithfield's voluntary cooperation with DOH by using the information disclosed for scientific and public health purposes against Smithfield in an adversarial context. Such practices will have a chilling effect on any company's willingness to cooperate with public health departments in the future. No reasonable employer would voluntarily cooperate with public health officials for the greater good if the outcome of that cooperation is an enforcement action by another government agency. No good deed goes unpunished writ large. This is a dangerous precedent to set in the context of a novel virus about which much remains unknown.

We hope that you are willing to consider the issues raised in these objections, and discuss with DOH and with Smithfield whether the Subpoena can be narrowed to accommodate Smithfield's legitimate concerns or determine other alternative approaches. For example, Smithfield proposes that it be given an opportunity to review the materials in DOH's production prior to its production to OSHA. This would allow Smithfield to specifically identify any documents to which it objects and narrow the scope of any potential issues for resolution with OSHA and/or a court. To facilitate our discussions and ensure that there is sufficient time to account for Smithfield's due process objections, we respectfully request that you extend the time specified for DOH's response to the Subpoena and notify DOH of same immediately.

We are hopeful that we will be able to resolve our differences without court involvement. However, if needed, Smithfield is prepared to assert the following objections and others, and seek appropriate relief and protection from, the United States District Court for the District of South Dakota.

**GENERAL OBJECTIONS**

1. Smithfield objects to the Subpoena generally on the grounds that it is overly broad, and seeks information that is not relevant or proportionate to OSHA's investigation of Smithfield's Sioux Falls plant. OSHA commenced its investigation after Smithfield voluntarily assisted DOH with an epidemiological investigation of its employees for public health purposes, after the Sioux Falls plant had closed and then re-opened (with



Sheila A. Stanley
June 25, 2020
Page 3

    the approval of the Department of Agriculture, the Centers for Disease Control, and DOH), and after Smithfield put in place many new safety protocols approved by these agencies and recommended by OSHA. The information sought by the Subpoena relates to time periods that pre-date OSHA's investigation.

2. Smithfield objects to the Subpoena generally on the grounds that it seeks to collect information that would not otherwise be available in this investigation. OSHA started its investigation on April 20, 2020 when the plant was shut down. OSHA's onsite investigation is limited to the reopened plant and what evidence it can collect from Company records and recollections of the prior time period. OSHA should not be permitted to change its investigatory timeline by using DOH conducted interviews in March and early April.

3. Smithfield objects to the Subpoena generally on the grounds that production of some of the information requested would violate Smithfield's rights to due process of law. Smithfield shared information with DOH in the context of a broader public health effort and epidemiological study to better understand the novel virus, not an adversarial proceeding such as an OSHA investigation. Those disclosures were not made subject to the procedural safeguards guaranteed under the OSH Act.

4. Smithfield objects to the Subpoena generally on the grounds that compliance with the Subpoena may require DOH to violate the terms and understandings pursuant to which Smithfield agreed to share information in the interest of public health and for the epidemiological study, including confidential employee data and other sensitive information.

5. Smithfield objects to the Subpoena generally on the grounds that disclosure of some of the information sought would violate the privacy interests of Smithfield's employees, which Smithfield has a duty to safeguard.

6. Smithfield objects to the Subpoena generally on the basis of its unreasonably short return date, which leaves no time for consideration of Smithfield's due process rights, its employees' privacy rights, and Smithfield's other legitimate interests implicated by the Subpoena.

7. Smithfield objects to this Subpoena generally because it seeks information voluntarily disclosed for public health purposes, which OSHA now intends to use in an adversarial proceeding against Smithfield. Voluntary cooperation with public health agencies should not be weaponized for purposes of an adversarial proceeding. As a policy matter, this creates a chilling effect on a company's willingness to participate in



Sheila A. Stanley
June 25, 2020
Page 4

    public health investigations and studies. In the current pandemic where much remains unknown about the virus and its characteristics, such a result could have far-reaching and damaging consequences.

8. Each of these general objections is incorporated by reference into the specific objections below.

## SPECIFIC OBJECTIONS

1. **Employee personally identifiable medical information.**

   **Objection:** Smithfield objects to this category only to the extent necessary to protect its employees' privacy rights. Smithfield legally may share information it has regarding employee personally identifiable health information under the protection of the OSHA issued medical access order and associated processes. Smithfield does not know if DOH has personally identifiable medical information beyond that which the Company provided to it and must have time to assess this issue and, if needed, offer employees the opportunity to object to production or production without redaction.

2. **Correspondence between the South Dakota Department of Health and Smithfield representatives.**

   **Objection:** OSHA already has the CDC report regarding recommendations from its site visit, which is publicly available. In addition to the general objections above, Smithfield also objects to this category on the grounds that it is not sufficiently definite, as required by *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950), because there is no time or subject matter limitation on the requested correspondence and is overly broad and seeks information neither relevant to, proportionate to, or within the scope of OSHA's investigation of the Smithfield Sioux Falls plant. *See* 29 U.S.C. § 657; *Morton Salt,* 338 U.S. at 652; OSHA 2020 Field Operations Manual ("FOM"), Ch. 3; *Donovan v. Union Packing Co. of Omaha,* 714 F.2d 838, 839 (8th Cir. 1983) (Secretary has subpoena power to obtain records company required to maintain under section 657 "as well as other standard records which are necessary to compute the lost workday injury rate.").

3. **Interviews conducted with employees or management officials related to the outbreak of COVID-19.**

   **Objection:** In addition to the general objections above, Smithfield objects to the production of this information on the grounds that it violates Smithfield's due process rights. The DOH interviews were not conducted subject to the procedural safeguards



Sheila A. Stanley
June 25, 2020
Page 5

    guaranteed by OSHA, including but not limited to the right of management employees to have a company attorney or other representative present at the interview, the right of non-managerial employees to have a union representative, or other representative of their choosing, present, and the contextual information that OSHA is required to disclose prior to any interviews. *See* FOM, Ch. 3 [Inspection Procedures], § (II); Ch. 5, §VII. In the context of Smithfield's cooperation with DOH, Smithfield did not insist on the same protections that it would be entitled to had OSHA conducted the interviews. Smithfield also objects to this category because the information sought is not relevant or proportionate to its investigation. The information Smithfield managers and hourly workers shared with DOH for public health purposes is not coextensive with the information to which OSHA has a right for law enforcement purposes. OSHA is conducting its own interviews for purposes of its investigation, at which these procedural safeguards are in place. It must base its findings on the results of its own investigation. *See* FOM, Ch. 3-5 generally.

4. **Statistical data reflecting any potential clusters of COVID-19 within the plant, including production lines, work stations, or common areas.**

    **Objection**: Smithfield objects to production of any information in this category created, compiled and analyzed by DOH. This information, which belongs to DOH, is integral to its public health and epidemiological study. It was collected before OSHA commenced its Sioux Falls investigation; indeed, before OSHA even published guidelines for the meat processing industry. To the extent OSHA seeks to use DOH collected, compiled and analyzed data in an effort to prove hazardous conditions, OSHA is essentially converting DOH into an expert witness. This may place DOH and Smithfield in an adversarial position wholly at odds with the current cooperative effort, and chill future cooperation. Were OSHA to issue citations to the Company, the Company might find itself in the position where it had to depose DOH to defend the Company. If OSHA seeks to make a case based upon statistical data it needs to conduct its own analysis using its own resources or publicly available information.

5. **Photographs and/or video taken of the plant, including workstations, processes or equipment.**

    **Objection**: In addition to the general objections above, Smithfield objects to this category because it seeks the company's trade secrets, confidential and proprietary information, which Smithfield shields from public disclosure. *See* FOM Ch. 5-12(C). The equipment and processes that Smithfield uses on its production lines have value to Smithfield's competitors. Smithfield would not disclose this information to OSHA



without appropriate confidential classification establishing that it would not be subject to FOIA disclosures or used for any purpose outside OSHA's investigation.

6. **Any recommendations issued to Smithfield by the State of South Dakota, Department of Health, to combat the spread of the virus.**

   **Objection:** OSHA already has the CDC report regarding recommendations from its site visit, which is publicly available. In addition to the general objections above, Smithfield objects to this category to the extent it seeks additional information that the DOH/CDC chose not to release to the public.

I welcome the opportunity to discuss these issues amicably and reach resolution. In the meantime, please confirm that you will extend DOH's response deadline.

Yours truly,

Susan F. Wiltsie

Cc: Justin L. Williams, Esq.
    Kim Malsam-Rysdon